The next case for oral argument this morning is 25-1034, Saud v. DePaul University The case is governed by a simple logic. The necessary condition for trial is the presence of genuine disputes of material fact. The sufficient condition is that those disputes, if viewed in Mr. Saud's favor, could allow a reasonable jury to find discrimination. Both conditions are satisfied many times over. The District Court's grant of summary judgment was error. The record contains multiple independent disputes of material fact. Any one defeats summary judgment, and together they overwhelm it. The first dispute is contradictory testimony about the reason for non-rehire. DePaul now claims that Chair Kesch refused to rehire Saud because of the CM allegations and because of so-called other complaints. But at the CM trial, Kesch swore under oath that the decision was the Dean's and that it had nothing to do with CM's allegations. He also swore he had never heard of any other complaints regarding Saud. Today, DePaul says the opposite. That is a direct contradiction on a material fact. The second dispute are the other complaints. These so-called complaints were vague hearsay, never documented, never investigated, never reported contemporaneously. Investigator Tamburo herself noted there was nothing to investigate. Yet the District Court credited DePaul's position that Kesch believed them, even though Kesch testified in 2019, two years after the fact, that he knew of no such complaints. That is a classic credibility dispute. The third dispute is the chronology problem. Kesch canceled Saud's courses in May, six weeks before Marta Lobu filed her lawsuit, sorry, CM filed her lawsuit, and or any other so-called complaints surfaced, again contradicting DePaul's claim. DePaul cannot rely on later events to justify an earlier decision. Chronologically, it is impossible. The fourth dispute are misrepresentations about course cancellations and salary. Kesch told Saud that he canceled both his and Comparator Lysak's classes. In truth, he only canceled Saud's while he was in good standing. Kesch testified that Saud was a popular professor whose classes were so full they often had wait lists to enroll. By canceling his classes, Kesch prevented students from enrolling in Saud's courses, thus suppressing enrollment and opening the low enrollment pretext claim later. Kesch told Saud he was not rehired because he had asked for too much money, but Comparator Lysak, a white colleague, asked for more, had his request forwarded to the dean, and he was retained even though his request for more money wasn't granted. You've relied on Lysak as a comparator, but the investigation that was done of Lysak turned, they determined that there was no wrongdoing there, that it wasn't even the right person, that these comments that were made about a professor, they linked them to somebody else. So how can Lysak be an appropriate comparator for you when the investigation here to Paul determined that your client had sex with the student when she was in his class? There are two things, two ways I would respond to that. First, in the case of Lysak, there was no determination that was made. They couldn't communicate with the accuser. Lysak's accuser accused him of rape. They were never able to identify him. But they determined that it was not Lysak. They did not have sufficient evidence to determine that this was Lysak who was being talked about. There was no determination made. It was Lysak who said that, who raised that as his defense. There was no investigation conducted. But there was no finding of misconduct on his part when there was a finding of misconduct on your client's part. So how can he be a comparator? Exactly, because the two were in similar situations. Both had been accused of misconduct. And both were treated differently. And that's what the comparator analysis looks at. Are these two substantial differences? The comparator analysis under our case law, it has to be apples for apples. It has to be a very clear, appropriate comparator. But we don't require clones. We require substantial similarity. And here you have two people in the same department, teaching at the same level, who are accused of similar misconduct. But you don't have a student from DePaul coming forth against Lysak saying... You didn't have one in Saoud's case either. You had CM who never cooperated with Title IX. But she's a student there, and she made the complaint. So presumably was the person who accused Lysak. But they never even tried to find him, the person who accused Lysak. They just took Lysak's defense. I don't think that's what the evidence bears out here. But go ahead. I'm sorry, can you repeat that? I don't think that's what the evidence in the record bears out as to Lysak. The evidence in the record, according to Schaefer, who was deposed in this, and she conducted that investigation, she did nothing but receive Lysak, talk to Lysak. And she received his explanation. If we don't think that you have identified appropriate comparators, can you still prevail? Yes, we have other evidence that we could rely on. But I would say Lysak is an appropriate comparator. Lysak was accused of rape. Schaefer talked to him. Lysak was the one that said, it wasn't me, it's probably mistaken identity. But the accuser actually named him by name, by department, and by school. Lysak said, oh, this is another professor at a different school that teaches rape studies. But the accuser actually named Lysak by department and by university. And they took Lysak's statements, and they credited them, and they never spoke to an accuser in that case. And they never really did a thorough investigation, which is corroborated by Investigator Cheryl Wayne's testimony, where she says, we don't conduct investigations if we don't have the cooperation of the accuser. But the allegations against Lysak, as I recall the record, were made on social media, right? Yeah, but I think that's a distinction without a difference. There's an accusation made. You think it doesn't matter if, as far as the university goes, whether an allegation is made anonymously on social media versus where a student formally files a complaint with the university? The student did not formally file a complaint. The university received a letter from her attorney. The student did not cooperate with the investigation. The student refused on two occasions to cooperate. And you think that those situations are similar enough to pass the comparators test? I do, especially when you consider Wayne's testimony, where she talked about the process. And she said, we do not investigate if we don't have both sides to talk to. Otherwise, there's an inherent appearance of unfairness there. And that's their process, and they deviated from that process in Sue's case. So, you know, I guess the way I see it, there seems to be kind of two adverse employment actions that your client is challenging. One is the decision not to hire him as an adjunct instructor in the fall of 2017, where, you know, like that initial letter from Kesh. And the second is the letter saying that DePaul will no longer qualify, consider him for any future jobs, right? With regard to the first letter, after that first letter was sent, at least the record seems to indicate that Kesh was trying to get more money for your client and kind of working with their client to try to schedule classes. And Tim Burrow cleared your client of the first, you know, with regard to the first Title IX inquiry. And so it's, from that vantage point, it's difficult to see how that conduct would be consistent with a university's motivation to either terminate him or to treat him badly because of his race. And I'm wondering if you can kind of put that, tell me how you view those facts about the university and people and Kesh coming to Saud's assistance during that time, after that initial letter. Nobody came to Saud's assistance during that time. Well, I guess, you know, you say that the second letter, the second Title IX inquiry, where, you know, they took him to task, different from the first inquiry, that that was motivated by race discrimination. And I wonder if they were going to discriminate him on the basis of his race and wouldn't they do that the first time too? Like, I'm trying to understand, like, you know, in the beginning there seems to be, you know, looking at the facts, kind of record as a whole, there seems to be, you know, efforts made by the university on your client's behalf. And I'm wondering how, or at least, you know, purportedly on your client's behalf. And I'm wondering how you view those facts. The way that we view them is that when Saud was cleared in May and he began discussions to come back to teach as an adjunct just at the same time Lysak was, Lysak's courses were assigned to him for the fall. They were posted and they were assigned to Lysak. In Saud's case, his courses were assigned to staff. And with Keshk knowing that there were regularly wait lists for students to enroll in Saud's courses, he knew that that was going to suppress enrollment in his courses. Thus, that would create the pretext for low enrollment later. Also, we see that he invited Saud to request enhanced pay along with Lysak, but did not forward Saud's request to the dean. He forwarded Lysak's. Lysak's was denied, but he was offered the base rate. Saud was told he asked for too much money. This disparity in treatment shows us that the steps they were taking with respect to Saud were pretext. They were just there to create the excuses. What would have precipitated that timeline? As I read your briefs, you start everything with a Campus Watch article. Yes. And from there you say Keshk treated Saud differently in the cancellation of his classes. Yes. Is there anything else there that I'm missing in your timeline about what would have motivated Keshk to treat Saud differently on the basis of his race? We have from the affidavit of Scott Pace that the pattern was that if a professor was outed on Campus Watch or one of those watch list websites, that Title IX reports would very soon follow. That happened to Pace. I didn't see a lot of information in your briefing about this Campus Watch article. And it seems as if Saud participated. He was interviewed. No. He was interviewed in another article for another publication, and then Campus Watch wrote an article about that. Have you told us in this record, was that Campus Watch article a hit piece? What information do we have in the article so that we can draw the inferences you want us to draw from that article as something that motivated Keshk to treat Saud differently? The point is that Campus Watch itself, when it publishes anything about a professor, it's putting them on a target list. And Keshk acknowledges that in his deposition. He's aware of what Campus Watch is and what it does. Does it matter that that article that you're discussing with Judge Jackson-Akumi really focused on Saud's speech and not his race? I think it's irrelevant because Campus Watch, if you go to the website, they do talk about – But wouldn't that be relevant to a race discrimination claim? If your argument is that putting on Campus Watch, that started the ball rolling. And if Campus Watch is all about his speech and what he was saying on campus, that others may not have agreed with, that's what got the ball rolling. How do you make the connection to racial discrimination? It may have gotten the ball rolling, but it doesn't justify what DePaul did and how they treated him differently from other people on the basis of his race. So we have also to that that Keshk told Saud that DePaul would discriminate against him right when Saud told him about what was going on with the Title IX complaints. And I also want to point out that – You are in your rebuttal time, just so you know. I know. I want to make just one more point before I rest the rebuttal. They invented policy violation. DePaul claims that Saud violated policy on faculty-student relationships, but DePaul doesn't have a policy prohibiting such relationships. Coordinator Tamburo acknowledged this, as did the OIDEP, and Cheryl Wayne corroborated this as well. So whether this policy existed at all is flatly disputed by DePaul's own officials. And there were the Title IX irregularities. The fact that Tamburo denied and deprived Saud of a counterclaim, where with the white comparator Joseph Sulia, she proactively gave him that right. We talked about the comparators, and then the discriminatory animus. I would add to that that Almena McLeod, an African-American senior faculty member, provided an affidavit confirming that Keshk regularly suppressed and ignored concerns raised by minority faculty. These conditions, the necessary conditions, are met. The sufficient conditions ask whether, taken together, a jury can find discrimination, and I think overwhelmingly they can. I will reserve the rest of my time for rebuttal. Thank you. Mr. Paul? I'm ready when you are. Whenever you're ready. Go ahead, please. Thank you, Your Honor. May it please the Court. Brian Paul on behalf of the defendant appellee at DePaul University. In Naka V. McAllister College, the District Court of Minnesota summed up this case quite accurately, though writing about its own. There, the District Court wrote, quote, nothing about the circumstances of this case gives rise to an inference of discrimination. What changed after May 2015 was not the plaintiff's race, ancestry, sex, sexual orientation, or religion. What changed is that a former student made a formal complaint of sexual misconduct. Let me ask you about that timeline, then. Um, the, uh, Saul's courses were canceled in May before CM's allegations came to light. Why were all three of his courses canceled at that time, but only one of Lysak's cases, courses? Uh, well, this goes back for a moment. In April of 2017, for budget reasons, both Mr. Lysak and Mr. Sode were, uh, their employment was ended due to budgetary concerns. That's not an issue in this case. We understand. Right. So what happens after that? Uh, the cases, the courses aren't canceled. Staff is listed for Sode. Lysak has one case that remains on. What complicates that, as they're trying to figure out how to list for that case, is the first Title IX investigation. So as they're doing the first Title IX investigation. No, but the relisting, as I understand, it happened before, uh, the CM allegations came to light. Before the attorney lien letter. The, the relisting of his courses occurred after the first determination by Karen Tamburo in May of 2017. No, the initial taking them off the schedule. That happens before. That happens. And he, all three of his are taken off, and only one of Lysak's. I think you're skipping ahead to where they're put back on. They're removed as, uh, term professors, because neither one are term professors anymore. It is true that in that process, one of, uh, Mr. Lysak's courses managed to slip through as a continued term, but that was changed and corrected to adjunct. So that's the moment I'm talking about. Why the difference in treatment? That, that's not a difference in treatment. That's just as they're doing through their pot, through their, uh, internal system as to how to list these courses and what to name. There's just, uh, they don't get to one of Lysak's courses until, uh, later when they have to change his status. They just, they remove two of them and not the third. So you're saying that was just a mistake? That's just, I, I don't even know if it's a mistake as much as it is they're going through their process internally. Did I miss the deposition testimony about that? Uh... About the, all three of Saoud's, uh, being removed, uh, only one of Lysak's, and that being, uh, an administrative mistake. And all of Lysak's should have also been removed? Did I miss that? Well, removed, it should have been changed to, uh, potentially an adjunct professor and not the term professor, and that change did ultimately happen. Uh, that, that is, uh, I believe Cass testifies to that, but I don't remember explicitly which deposition testimony that comes from. So at some point, that third, like, that other Lysak course was changed as well? Correct. To staff? Well, to adjunct. So he, he moved from a, a term, uh, professor to an adjunct. But it was never listed as staff the same as... I am not aware of it having being listed as staff. I don't believe that was, I don't believe there's record evidence one way or the other on that. Here, in this case, like in McAllister, plaintiff appellant Laith Saud pursued and initiated a sexual relationship with a student in his class. As a result of that decision, Kesk made the decision not to hire Mr. Saud again in the fall of 2017 to teach a quarter, and after DePaul finished its second investigation, the dean made the decision that Mr. Saud would no longer be eligible. Why didn't he just tell him that? Why didn't Kesk just tell Saud that he couldn't be an adjunct because of the lawsuit? Well, you have to put yourself in Kesk's shoes in that moment, right? The timeline here is very important. On June 28th, he writes to Saud and says, and to Lysak, and says, tell me what your salary demands are. I will go, uh, see if I can, what I can make happen on those. On June 29th, CM files her lawsuit, and a Times article is also published. On June 30th, Kesk learns of the lawsuit. Then over the July 4th holiday, he has two more people come to him. There's a pending lawsuit. It's got DePaul's name in it. Kesk doesn't know what he can or cannot say about that lawsuit. What he does know is that given that lawsuit, he's not going to negotiate salary and he's not going to work on the course load. So he's clear in his testimony on that. Counsel would have you believe there's contradictory testimony from the trial of CM in 2019. There is not contradictory testimony. Kesk is asked at that trial two things. One, why was Saud's employment ended? He testifies. Because of the budget cuts, that decision was made by the dean. At no point during that trial do they say, is there a reason he was not rehired as an adjunct? That question is not asked. Second, there's a suggestion that Kesk testified at trial that he was not aware of any complaints. The question actually is, during the 12 years you taught with him, did anyone make you aware of a complaint? All the complaints about Saud came after he had stopped teaching and indeed the complaints that caused the decision not to rehire occurred after Mr. Saud was no longer employed at  The timeline here is very important. June 28th, Dr. Kesk is working hard to try to find a spot for Saud. Lawsuit filed the next day, Kesk learns of the next day, two more complaints over the next four days, then a decision is made. Kesk, or Saud's race is the same before June 28th as it is on July 6th. The only thing that changes, just as in McAllister, is the lawsuit that comes in, and it's a lawsuit that alleges he used his position as a professor to coerce a non-consensual sexual relationship with a student. The 7th Circuit addresses this in CS which dealt with whether or not a school should put a teacher in a classroom while there are allegations of harassment. In that case the 7th Circuit instructs a school that knowingly employs a serial harasser is asking for trouble. On the legal side, the litigation process, discovery and summary judgment will allow everything to get sorted out after the fact. But as a practical matter, when the school officials have to make decisions in real time, the best course will be to err on the side of taking reactive and preventive measures. That's exactly what Kesk did. He was faced with a difficult situation, who by the way Kesk is also Middle Eastern, he's taught with this person for 12 years, but he's staring down the barrel of serious allegations. He cannot put him in the classroom that next quarter. It has nothing to do with his race and it has nothing to do with the Campus Watch article. Is there any evidence that after the lawsuit was filed that Mr. Sowood denied the allegations to DePaul? Nobody sent the answer in response and the answer didn't outright deny them. Is there any evidence that he denied them, the allegations? The only thing he submitted, Your Honor, was his verified answer. That verified answer did a couple important things for Ms. Tamburo. Number one, that verified answer admitted that while CM was a student in his class, they went out for drinks after class and their relationship became flirty. Importantly, in the affirmative defense labeled consent, Mr. Sowood pleads some very specific facts. He pleads that he did not make their sexual relationship contingent on giving her an A in the class. He did not make her sexual relationship contingent on any performance or grading in the class. What's implicit in that is that that sexual relationship occurred during the class. Had it occurred not during the class, he would have simply said none of those things are possible because we didn't have sex until after she was no longer a student. Using a preponderance of the evidence, Karen Tamburo took that evidence, changed her finding and determined that, in fact, Mr. Sowood had sex with CM while she was a student in his class. It turns out, that could have been wrong or could have been right and it wouldn't have affected this case because DePaul acted on that belief. It turns out, we now know she was right. Her second investigation got it right. Her preponderance of evidence finding was correct and in fact he did have sex with a student in his class. Mr. Sowood can disagree with whether DePaul should have taken the action all Mr. Sowood wants. He can say he should have been free to have sex with a student in his class. What he has not done in this case is show that had he been of a different race, DePaul would have made different decisions. We heard a lot of talk a moment ago about Mr. Lysak and whether or not he's a comparator. As this panel has properly observed, there was an anonymous Facebook social media post that was reported by someone else to the university. Contrary to contention by counsel, DePaul did investigate it. In fact, DePaul took the photo that was on the social media post and tried to match it to a student. No one could match it. They talked to Mr. Lysak. In direct contrast with Sowood who said, Yes, I did sleep with the student. Lysak said, I don't even know who this student is or what they're talking about. By the way, my name's not spelled right. If you want to find the person who's spelled this way who also happens to be a professor dealing with rape as a topic, here he is. Based on that, DePaul found that there was no misconduct. You can understand why Mr. Sowood is not mollified by that because the allegation on Facebook did say a DePaul Catholic Studies professor. It may have been Religious Studies. Even if the name was misspelled, it clearly identified this person as teaching in DePaul's Religious Studies Department. As I hear Miss Abraham this morning, she's pointing to a difference in investigation. Not so much a difference in outcome, but a difference in investigation. Can you speak to that? Yes, I can. Absolutely. There is no difference in investigation. Let's assume that both complaints are the same for a moment, which is absolutely not true. Let's assume that they are. What happens as a result of the complaint? They go speak to the alleged harasser in the case. One being Lysak. One being Mr. Sowood. In the first instance, Mr. Lysak, they speak to the harasser. They interview him and they try to identify the student. They can't identify the student, probably because the student doesn't exist, but put that aside for a moment. We don't have a name. It's Donnie Wan, who isn't. They check. There are no Donnie Wan students. They use the photo. They can't find it. What else is DePaul supposed to do in that situation to further investigate when Lysak denies knowing anything about it? In contrast, when they get CM's first letter from the lawyer, they're able to identify the student. They know who it is. They go to Mr. Sowood and they interview him. In fact, they take him at his word. And in their first investigation, they find no violation because Mr. Sowood represents that it happened after his course and in fact it was his understanding that she was no longer enrolled in DePaul when they had a sexual relationship. The investigations are the exact same. The facts that come out are drastically different. And then what happens? So still, first investigation, same race, same ethnicity, no violation. Second investigation, we now have a verified answer that I already spoke to Judge St. Eve about that's indicated why there was a sexual relationship while she was a student in his class. Based on that preponderance of an evidence, they find violation. The investigation process is the same. The outcomes are drastically different based on different facts. Lysak is not comparable because DePaul never determined that he engaged in any misconduct whatsoever. Mr. Paul, going back a bit to Mr. Keshe's testimony during the trial, so what you're saying is he's asked, to your knowledge, the decision for Mr. Sowood not to be retained by DePaul have anything to do with allegations made by CM and Mr. Keshe answers no, to my knowledge, no. So what he's talking about there, about when he said Sowood's not being retained, was that initial letter when his status as adjunct was terminated. When his status as a term professor was terminated as of April 2017. Not later on when DePaul said we're not going to rehire you ever. Correct. You can see in the questioning of the testimony why was he not retained, budgetary reasons, a decision by the Dean. And that is accurate. That was the end of his employment at DePaul. The other stuff is just whether he will ever be rehired. I don't have a rebuttal so I won't save my 45 seconds but if there are any other questions I'm happy to answer those. Thank you. Thank you, Your Honors. Ms. Abraham, you have 46 seconds. The first thing I will point out is that the cases pointed to by DePaul don't, in those schools, those schools prohibited relationships between faculty and students and DePaul does not. Keshe was asked about this at the CM trial. He was asked, he first did evasively request that he be rehired  but then he was asked point blank by opposing counsel, by Martalogo's counsel, was the decision for Mr. El-Saoud not to be retained by DePaul have anything to do with the allegations made by CM? He said, to my knowledge, no. This has to go to a jury. These inconsistent sworn statements create pretext, create tribal issues of facts. The other thing I wanted to point out was Lysak and Saoud as term faculty had three courses. Lysak's one course was canceled, two were reserved for him because adjuncts only teach two courses per quarter. They don't teach three. That's why. Lysak's courses were assigned to him Saoud's were not. This case should go to trial. We ask the court to reverse the district court summary judgment grant. Thank you Ms. Abraham. The court will take the case under advisement.